MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------X

JOSE ALBERTO MARTINEZ HERNANDEZ, ROBERTO JULIAN, ELIAS ROJAS, AGUSTIN VALERIANO, EMILIO JEREMIAS RAMIREZ ROJAS and PRIXCO SORIANO, *individually and on behalf of others similarly situated,*

                              *Plaintiffs,*

             -against-

EAST WINGERS INC. (d/b/a BEST WINGERS) and KUNJ PATEL,

                        *Defendants.*

--------------------------------------------------------X

**FIRST AMENDED COMPLAINT**

**17-CV-02176-ALC**

    Plaintiffs Jose Alberto Martinez Hernandez, Roberto Julian, Elias Rojas, Agustin Valeriano, Emilio Jeremias Ramirez Rojas and Prixco Soriano, individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against East Wingers Inc. (d/b/a Best Wingers) ("Defendant Corporation") and Individual Defendant Kunj Patel allege as follows:

<u>**NATURE OF THE ACTION**</u>

    1.    Plaintiffs are former employees of Defendants East Wingers Inc. (d/b/a Best Wingers), and Kunj Patel (collectively, "Defendants").

    2.    Defendants own, operate, or control a chicken wing outlet located at 711 Second Avenue, New York, NY 10016 under the name "Best Wingers."

3.     Upon information and belief, individual defendant Kunj Patel serves or served as owner, manager, principal, or agent of Defendant Corporation and, through this corporate entity, operates or operated the chicken wing outlet.

4.     Plaintiffs were ostensibly employed by Defendants as delivery workers.

5.     However, they were required to spend a considerable part of their work day performing non-tipped duties including but not limited to, various chicken wing outlet duties such as sweeping the sidewalk and the stairs, making dressing, cutting celery, cleaning the basement and bathroom, carrying down and stocking deliveries, carrying up bottled and canned drinks and stocking the refrigerator, taking out the garbage and twisting and tying up cardboard boxes (hereinafter the "non-tipped duties").

6.     At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage or overtime compensation for the hours that they worked each week.

7.     Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.     Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they worked over 10 hours per day.

9.     Defendants employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent in non-tipped, non-delivery duties.

10.     Regardless, at all times Defendants paid these Plaintiffs at a rate that was lower than the required tip-credit rate.

11.     Under state law, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday (12 N.Y.C.R.R. §146-2.9).

12.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records to avoid paying Plaintiffs at the minimum wage rate and to enable them to pay Plaintiffs at the lower tip-credited rate (which they still failed to do), by designating them as delivery workers instead of non-tipped employees.

13.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

14.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees, and costs.

15.     Plaintiffs seek certification of this action as a collective action on behalf of themselves individually and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

17.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a chicken wing outlet located in this district. Further, Plaintiffs were employed by Defendants in this district.

## THE PARTIES

*Plaintiffs*

18.     Plaintiff Jose Alberto Martinez Hernandez ("Plaintiff Martinez" or "Mr. Martinez") is an adult individual residing in Bronx County, New York. Plaintiff Martinez was employed by Defendants from approximately November 8, 2015 until on or about March 3, 2017.

19.     Plaintiff Roberto Julian ("Plaintiff Julian" or "Mr. Julian") is an adult individual residing in Kings County, New York. Plaintiff Julian was employed by Defendants from approximately July 2016 until on or about February 10, 2017.

20.     Plaintiff Elias Rojas ("Plaintiff Rojas" or "Mr. Rojas") is an adult individual residing in New York County, New York. Plaintiff Rojas was employed by Defendants from approximately February 2016 until on or about March 10, 2017.

21.     Plaintiff Agustin Valeriano ("Plaintiff Valeriano" or "Mr. Valeriano") is an adult individual residing in Bronx County, New York. Plaintiff Valeriano was employed by Defendants from approximately April 4, 2017 until on or about August 17, 2017.

22.     Plaintiff Emilio Jeremias Ramirez Rojas ("Plaintiff Ramirez" or "Mr. Ramirez") is an adult individual residing in New York County, New York. Plaintiff Ramirez was employed by Defendants from approximately April 2, 2017 until on or about August 14, 2017.

23.     Plaintiff Prixco Soriano ("Plaintiff Soriano" or "Mr. Soriano") is an adult individual residing in New York County, New York. Plaintiff Soriano was employed by Defendants from approximately March 1, 2017 until on or about August 16, 2017.

*Defendants*

24.     At all relevant times, Defendants owned, operated, or controlled a chicken wing outlet located at 711 Second Avenue, New York, NY 10016 under the name "Best Wingers."

25.     Upon information and belief, East Wingers Inc. ("Defendant Corporation") is a domestic corporation organized and existing under the laws of the State of New York.

26.     Upon information and belief, Defendant Corporation maintains its principal place of business at 711 Second Avenue, New York, NY 10016.

27.     Defendant Kunj Patel is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period.

28.     Defendant Kunj Patel is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation.

29.     Defendant Kunj Patel possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, and establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

30.     Defendants operate a chicken wing outlet located in New York City.

31.     The individual defendant, Kunj Patel possesses operational control over Defendant Corporation, possesses ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation.

32.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

33.     Each Defendant possesses substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

34.     Defendants jointly employ Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. § 201 *et seq*. and the NYLL.

35.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

36.     Upon information and belief, individual Defendant Kunj Patel operates Defendant Corporation as either an alter ego of himself and/or fails to operate Defendant Corporation as an entity legally separate and apart from himself, by among other things:

   a.   failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a corporation,

   b.   defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

   c.   transferring assets and debts freely as between all Defendants,

d.  operating Defendant Corporation for his own benefit as the sole or majority shareholder,

e.  operating Defendant Corporation for his own benefit and maintaining control over it as a closed corporation,

f.  intermingling assets and debts of his own with Defendant Corporation,

g.  diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect his own interests, and

h.  other actions evincing a failure to adhere to the corporate form.

37.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

38.    In each year from 2015 to 2017, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

39.    In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that are used in the chicken wing outlet on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

40.    Plaintiffs are former employees of Defendants who were ostensibly employed as delivery workers. However, they spent over 20 percent of their work hours performing the non-tipped/non-delivery duties described above.

41.    Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C.

§ 216(b).

*Plaintiff Jose Alberto Martinez Juarez*

42. Plaintiff Martinez was employed by Defendants from approximately November 8, 2015 until on or about March 3, 2017.

43. Defendants ostensibly employed Plaintiff Martinez as a delivery worker.

44. However, Plaintiff Martinez also was required to spend a significant portion of his work day performing the non-tip duties described above.

45. Although Plaintiff Martinez ostensibly was employed as a delivery worker, he spent over twenty percent of each work day performing the non-tip work described above.

46. Plaintiff Martinez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

47. Plaintiff Martinez's work duties required neither discretion nor independent judgment.

48. Throughout his employment with Defendants, Plaintiff Martinez regularly worked in excess of 40 hours per week.

49. From approximately November 8, 2015 until on or about December 2016, Plaintiff Martinez worked from approximately 11:00 a.m. until on or about 11:00 p.m., five days a week and from approximately 11:00 a.m. until on or about 11:30 p.m. one day a week (typically 72.5 hours per week).

50. From approximately January 2017 until on or about March 3, 2017, Plaintiff Martinez worked from approximately 11:00 a.m. until on or about 11:00 p.m., four days a week and from approximately 11:00 a.m. until on or about 11:30 p.m. one day a week (typically 60.5 hours per week).

51.     Throughout his employment with Defendants, Plaintiff Martinez was paid his wages in cash.

52.     From approximately November 8, 2015 until on or about March 3, 2017, Defendants paid Plaintiff Martinez a fixed salary of $40 per day.

53.     Plaintiff Martinez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

54.     For example, Defendants required Plaintiff Martinez to work an additional 30 minutes past his scheduled departure time at least one day every week, and did not pay him for the additional time he worked.

55.     Plaintiff Martinez was never notified by Defendants that his tips were being included as an offset for wages.

56.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Martinez's wages.

57.     No notifications, either in the form of posted notices or other means, were given to Plaintiff Martinez regarding overtime and wages under the FLSA and NYLL.

58.     Plaintiff Martinez was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

59.     Instead, from approximately December 13, 2016 until on or about March 3, 2017, defendants required Plaintiff Martinez to sign a document the contents of which he was not allowed to review in order to get his weekly paycheck.

60.     Furthermore, Defendants did not provide Plaintiff Martinez with a statement of wages with each payment of wages, as required by NYLL 195(3).

61.     Defendants did not give any notice to Plaintiff Martinez, in English and in Spanish (Plaintiff Martinez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

62.     Defendants required Plaintiff Martinez to purchase "tools of the trade" with his own funds—including a bicycle, and a helmet.

*Plaintiff Roberto Julian*

63.     Plaintiff Julian was employed by Defendants from approximately July 2016 until on or about February 10, 2017.

64.     Defendants ostensibly employed Plaintiff Julian as a delivery worker.

65.     However, when he worked a 12-hour shift, Plaintiff Julian also was required to spend a significant portion of his work day performing the non-tip duties described above.

66.     Although Plaintiff Julian ostensibly was employed as a delivery worker, when he worked a 12-hour shift, he spent over twenty percent of each work day performing the non-tip work described above.

67.     Plaintiff Julian regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

68.     Plaintiff Julian's work duties required neither discretion nor independent judgment.

69.     Throughout his employment with Defendants, Plaintiff Julian regularly worked in excess of 40 hours per week.

70.     From approximately July 2016 until on or about September 2016, Plaintiff Julian worked from approximately 11:00 a.m. until on or about 11:00 p.m. Mondays through Fridays and from approximately 11:00 a.m. until on or about 11:30 p.m.  Saturdays and Sundays (typically 85 hours per week).

71.     From approximately September 2016 until on or about February 2017, Plaintiff Julian worked from approximately 11:00 a.m. until on or about 5:00 p.m. Mondays through Wednesdays and from approximately 11:00 a.m. until on or about 11:30 p.m. Fridays through Sundays (typically 55.5 hours per week).

72.     Throughout his employment with Defendants, Plaintiff Julian was paid his wages in cash.

73.     From approximately July 2016 until on or about February 10, 2017, Defendants paid Plaintiff Julian a fixed salary of $40 per day when he worked a 12-hour double shift and $20 per day when he worked a 6-hour single shift.

74.     Plaintiff Julian's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

75.     For example, Defendants required Plaintiff Julian to work an additional 30 minutes past his scheduled departure time at least two or three days every week, and did not pay him for the additional time he worked.

76.     Plaintiff Julian was never notified by Defendants that his tips were being included as an offset for wages.

77.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Julian's wages.

78.     No notifications, either in the form of posted notices or other means, were given to Plaintiff Julian regarding overtime and wages under the FLSA and NYLL.

79.     Plaintiff Julian was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

80.     Instead, from approximately December 13, 2016 until on or about February 10, 2017, defendants required Plaintiff Julian to sign a document the contents of which he was not allowed to review in order to get his weekly paycheck.

81.     Furthermore, Defendants did not provide Plaintiff Julian with a statement of wages with each payment of wages, as required by NYLL 195(3).

82.     Defendants did not give any notice to Plaintiff Julian, in English and in Spanish (Plaintiff Julian's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

83.     Defendants required Plaintiff Julian to purchase "tools of the trade" with his own funds—including a bicycle, a vest, a helmet and $150 in bicycle repair and maintenance.

*Plaintiff Elias Rojas*

84.     Plaintiff Rojas was employed by Defendants from approximately February 2016 until on or about March 10, 2017.

85.     Defendants ostensibly employed Plaintiff Rojas as a delivery worker.

86.     However, when he worked a 12-hour shift, Plaintiff Rojas also was required to spend a significant portion of his work day performing the non-tip duties described above.

87.     Although Plaintiff Rojas ostensibly was employed as a delivery worker, when he worked a 12-hour shift, he spent over twenty percent of each work day performing the non-tip work described above.

88.     Plaintiff Rojas regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

89.     Plaintiff Rojas's work duties required neither discretion nor independent judgment.

90.     Throughout his employment with Defendants, Plaintiff Rojas regularly worked in

excess of 40 hours per week.

91.    From approximately February 2016 until on or about June 2016, Plaintiff Rojas worked from approximately 11:00 a.m. until on or about 11:00 p.m., Sundays, Mondays, Tuesdays and Thursdays and from approximately 11:00 a.m. until on or about 11:30 p.m.  Fridays and Saturdays (typically 73 hours per week).

92.    From approximately June 2016 until on or about August 2016, Plaintiff Rojas worked from approximately 5:00 p.m. until on or about 11:00 p.m. Sundays through Thursdays and from approximately 5:00 p.m. until on or about 11:30 p.m. Fridays and Saturdays (typically 43 hours per week).

93.    From approximately August 2016 until on or about October 2016, Plaintiff Rojas worked from approximately 11:00 a.m. until on or about 11:00 p.m. Mondays, Tuesdays, and Thursdays, from approximately 11:00 a.m. until on or about 5:00 p.m. on Fridays, from approximately 5:00 p.m. until on or about 11:30 p.m. on Saturdays and from approximately 12:00 p.m. until on or about 11:00 p.m. on Sundays (typically 59.5 hours per week).

94.    From approximately October 2016 until on or about December 2016, Plaintiff Rojas worked from approximately 11:00 a.m. until on or about 11:00 p.m. Mondays and Saturdays, from approximately 11:00 a.m. until on or about 5:00 p.m. on Tuesdays, from either approximately 11:00 a.m. until on or about 5:00 p.m. or from approximately 5:00 p.m. until on or about 11:00 p.m. on Thursdays, from either approximately 11:00 a.m. until on or about 5:00 p.m. or from approximately 11:00 a.m. until on or about 11:00 p.m. on Fridays and from approximately 12:00 p.m. until on or about 11:00 p.m. on Sundays (typically 53 to 59 hours per week).

95.    From approximately January 2017 until on or about March 10, 2017, Plaintiff Rojas worked from approximately 11:00 a.m. until on or about 11:00 p.m. Mondays, Tuesdays, and

Thursdays, from approximately 11:00 a.m. until on or about 5:00 p.m. on Fridays, from approximately 5:00 p.m. until on or about 11:00 p.m. on Saturdays and from approximately 12:00 p.m. until on or about 11:00 p.m. on Sundays (typically 59 hours per week).

96. Throughout his employment with Defendants, Plaintiff Rojas was paid his wages in cash.

97. From approximately February 2016 until on or about March 10, 2017, Defendants paid Plaintiff Rojas a fixed salary of $40 per day when he worked a 12-hour double shift and $20 per day when he worked a 6-hour single shift.

98. Plaintiff Rojas's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

99. For example, prior to October 2016, Defendants required Plaintiff Rojas to work an additional 30 minutes past his scheduled departure time at least two days every week, and did not pay him for the additional time he worked.

100. Plaintiff Rojas was never notified by Defendants that his tips were being included as an offset for wages.

101. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Rojas's wages.

102. No notifications, either in the form of posted notices or other means, were given to Plaintiff Rojas regarding overtime and wages under the FLSA and NYLL.

103. Plaintiff Rojas was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

104. Instead, from approximately December 13, 2016 until on or about March 10, 2017,

defendants required Plaintiff Rojas to sign a document the contents of which he was not allowed to review in order to get his weekly paycheck.

105.    Furthermore, Defendants did not provide Plaintiff Rojas with a statement of wages with each payment of wages, as required by NYLL 195(3).

106.    Defendants did not give any notice to Plaintiff Rojas, in English and in Spanish (Plaintiff Rojas's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

107.    Defendants required Plaintiff Rojas to purchase "tools of the trade" with his own funds—including two bicycles and a helmet.

*Plaintiff Agustin Valeriano*

108.    Plaintiff Valeriano was employed by Defendants from approximately April 4, 2017 until on or about August 17, 2017.

109.    Defendants ostensibly employed Plaintiff Valeriano as a delivery worker.

110.    However, Plaintiff Valeriano also was required to spend a significant portion of his work day performing the non-tip duties described above.

111.    Plaintiff Valeriano regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

112.    Plaintiff Valeriano's work duties required neither discretion nor independent judgment.

113.    Throughout his employment with Defendants, Plaintiff Valeriano regularly worked in excess of 40 hours per week.

114.    From approximately April 4, 2017 until on or about August 17, 2017, Plaintiff Valeriano worked from approximately 11:00 a.m. until on or about 11:00 p.m. two days per week,

from approximately 11:00 a.m. until on or about 11:30 p.m. three days per week and from approximately 11:00 a.m. until on or about 5:30 p.m. on Saturdays (typically 68 hours per week).

115. Throughout his employment with Defendants, Plaintiff Valeriano was paid his wages in cash.

116. Throughout his employment, Defendants paid Plaintiff Valeriano a fixed salary of $40 per day.

117. Plaintiff Valeriano's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

118. For example, Defendants required Plaintiff Valeriano to work an additional 30 minutes past his scheduled departure time approximately four days every week, and did not pay him for the additional time he worked.

119. Defendants did not grant Plaintiff Valeriano any breaks or meal period of any kind.

120. Plaintiff Valeriano was never notified by Defendants that his tips were being included as an offset for wages.

121. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Valeriano's wages.

122. In addition, Defendants illegally withheld half of the tips Plaintiff Valeriano received for big orders, such as catering events. There were approximately eight big orders per week, and the tips therefrom ranged from $350 to $600 per order (an average of $475 per order).

123. No notifications, either in the form of posted notices or other means, were given to Plaintiff Valeriano regarding overtime and wages under the FLSA and NYLL.

124. Plaintiff Valeriano was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device such as punch cards, that accurately reflected

his actual hours worked.

125. Furthermore, Defendants did not provide Plaintiff Valeriano with a statement of wages with each payment of wages, as required by NYLL § 195(3).

126. Defendants did not give any notice to Plaintiff Valeriano, in English and in Spanish (Plaintiff Valeriano's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

127. Defendants required Plaintiff Valeriano to purchase "tools of the trade" with his own funds—including one bicycle, one helmet, one vest, set of lights, lock and chain, and bicycle repairs.

*Plaintiff Emilio Jeremias Ramirez Rojas*

128. Plaintiff Ramirez was employed by Defendants from approximately April 2, 2017 until on or about August 14, 2017.

129. Defendants ostensibly employed Plaintiff Ramirez as a delivery worker.

130. However, Plaintiff Ramirez also was required to spend a significant portion of his work day performing the non-tip duties described above.

131. Plaintiff Ramirez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

132. Plaintiff Ramirez's work duties required neither discretion nor independent judgment.

133. Throughout his employment with Defendants, Plaintiff Ramirez regularly worked in excess of 40 hours per week.

134. From approximately April 2, 2017 until on or about August 14, 2017, Plaintiff Ramirez worked from approximately 10:45 a.m. until on or about 11:00 p.m. Mondays through

Saturdays (typically 73.5 hours per week).

135.    Throughout his employment with Defendants, Plaintiff Ramirez was paid his wages in cash.

136.    From approximately April 2, 2017 until on or about July 30, 2017, Defendants paid Plaintiff Ramirez a fixed salary of $40 per day.

137.    From approximately July 31, 2017 until on or about August 17, 2017, Defendants did not pay Plaintiff Ramirez any wages for his work.

138.    Defendants did not grant Plaintiff Ramirez any breaks or meal period of any kind.

139.    Plaintiff Ramirez was never notified by Defendants that his tips were being included as an offset for wages.

140.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Ramirez's wages.

141.    In addition, Defendants illegally withheld half of the tips Plaintiff Ramirez received for big orders, such as catering events.  There were approximately eight big orders per week, and the tips therefrom ranged from $350 to $600 per order (an average of $475 per order).

142.    No notifications, either in the form of posted notices or other means, were given to Plaintiff Ramirez regarding overtime and wages under the FLSA and NYLL.

143.    Plaintiff Ramirez was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

144.    Furthermore, Defendants did not provide Plaintiff Ramirez with a statement of wages with each payment of wages, as required by NYLL § 195(3).

145.    Defendants did not give any notice to Plaintiff Ramirez, in English and in Spanish

(Plaintiff Ramirez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

146.    Defendants required Plaintiff Ramirez to purchase "tools of the trade" with his own funds—including one bicycle, one helmet, one vest, a set of lights, and lock and chain.

*Plaintiff Prixco Soriano*

147.    Plaintiff Soriano was employed by Defendants from approximately March 1, 2017 until on or about August 16, 2017.

148.    Defendants ostensibly employed Plaintiff Soriano as a delivery worker.

149.    However, Plaintiff Soriano also was required to spend a significant portion of his work day performing the non-tip duties described above.

150.    Plaintiff Soriano regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

151.    Plaintiff Soriano's work duties required neither discretion nor independent judgment.

152.    Throughout his employment with Defendants, Plaintiff Soriano regularly worked in excess of 40 hours per week.

153.    From approximately March 1, 2017 until on or about August 16, 2017, Plaintiff Soriano worked from approximately 11:00 a.m. until on or about 11:00 p.m. Mondays through Fridays and from approximately 12:00 p.m. until on or about 11:00 p.m. on Sundays (typically 83 hours per week).

154.    Throughout his employment with Defendants, Plaintiff Soriano was paid his wages in cash.

155.    From approximately March 1, 2017 until on or about August 6, 2017, Defendants

supposedly paid Plaintiff Soriano a fixed salary of $40 per day for a 12-hour shift, but he never received more than $150 per week.

156. From approximately August 7, 2017 until on or about August 16, 2017, Defendants did not pay Plaintiff Soriano any wages for his work.

157. Plaintiff Soriano's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

158. For example, Defendants required Plaintiff Soriano to work an additional 15 to 30 minutes past his scheduled departure time at least two days every week (particularly, over the weekends), and did not pay him for the additional time he worked.

159. Defendants did not grant Plaintiff Soriano any breaks or meal period of any kind.

160. Plaintiff Soriano was never notified by Defendants that his tips were being included as an offset for wages.

161. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Soriano's wages.

162. In addition, Defendants illegally withheld half of the tips customers paid Plaintiff Soriano during his last month of employment.

163. In addition, Defendants illegally withheld half of the tips Plaintiff Soriano received for big orders, such as catering events. There were approximately eight big orders per week, and the tips therefrom ranged from $350 to $600 per order (an average of $475 per order).

164. No notifications, either in the form of posted notices or other means, were given to Plaintiff Soriano regarding overtime and wages under the FLSA and NYLL.

165. Plaintiff Soriano was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device such as punch cards, that accurately reflected

his actual hours worked.

166.    Instead, Defendants required Plaintiff Soriano to sign a document the contents of which he was not allowed to review in order to get his weekly paycheck.

167.    Furthermore, Defendants did not provide Plaintiff Soriano with a statement of wages with each payment of wages, as required by NYLL § 195(3).

168.    Defendants did not give any notice to Plaintiff Soriano, in English and in Spanish (Plaintiff Soriano's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

169.    Defendants required Plaintiff Soriano to purchase "tools of the trade" with his own funds—including two bicycles, one vest, a set of lights, a lock and chain, and bicycle repairs.

*Defendants' General Employment Practices*

170.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, overtime and spread of hours pay as required by federal and state laws.

171.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

172.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, resulting in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

173.    At no time did Defendants inform Plaintiffs that they reduced their hourly wage by a tip allowance.

174.     Defendants habitually required Plaintiffs to work additional time beyond their regular shifts but did not provide them with any additional compensation.

175.     Defendants required Plaintiffs to perform general non-tipped chicken wing outlet tasks in addition to their primary duties as delivery workers.

176.     Plaintiffs were employed ostensibly as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing non-tipped duties.

177.     These Plaintiffs were not even paid at a lowered tip-credited rate by Defendants.

178.     However, under state law, Defendants were not entitled to a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday when they worked 12-hour shifts (12 N.Y.C.R.R. § 146).

179.     New York State regulations provide that an employee cannot be classified as a tipped employee "on any day… in which he is assigned to work in an occupation in which tips are not customarily received."  (12 N.Y.C.R.R. §§146). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

180.     Plaintiffs' duties were not incidental to their occupation as delivery workers, but instead constituted entirely unrelated general chicken wing outlet work with duties including the non-tipped duties described above.

181.     In violation of federal and state law, as discussed above, Defendants classified Plaintiffs as tipped employees but did not even pay them at the tip-credited rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

182.     In addition, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' and other tipped employees' tips and made unlawful deductions from

Plaintiffs' and other tipped employees' wages.

183.    Defendants failed to inform Plaintiffs that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

184.    Defendants failed to inform Plaintiffs that their tips would be credited towards the payment of the minimum wage.

185.    Defendants failed to maintain a record of tips earned by Plaintiffs for the deliveries they made to customers.

186.    All Plaintiffs were paid their wages entirely in cash.

187.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

188.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

189.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

190.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated current and former delivery workers.

191.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

192.     Defendants failed to provide Plaintiffs and other employees with wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

193.     Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

**FLSA COLLECTIVE ACTION CLAIMS**

194.     Plaintiffs bring their FLSA minimum wage, overtime, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants on or after the date that is three years before the filing of this Complaint (the "FLSA Class Period"), as employees of Defendants (the "FLSA Class").

195.    At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or were similarly situated, have had substantially similar job requirements and pay provisions.

196.    At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or were similarly situated, were subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them minimum wage and overtime at a one and one-half times their regular rates for work in excess of forty (40) hours per workweek.

197.    At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or were similarly situated, were subject to Defendants' willful failure to keep records required by the FLSA.

198.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### (VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA)

199.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

200.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for their employment.

201.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

202.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

203.    In violation of 29 U.S.C. § 206(a), Defendants failed to pay Plaintiffs at the

applicable minimum hourly rate.

204.　　Defendants' failure to pay Plaintiffs at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

205.　　Plaintiffs were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### (VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA)

206.　　Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

207.　　Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

208.　　Defendants' failure to pay Plaintiffs, and the putative FLSA Class members, overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

209.　　Plaintiffs were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### (VIOLATION OF THE NEW YORK MINIMUM WAGE ACT)

210.　　Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

211.　　At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.　Defendants had the power to hire and fire Plaintiffs, controlled their terms and conditions of employment, and determined the rates and methods of any compensation in exchange for their employment.

212.　　Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

213.　　Defendants' failure to pay Plaintiffs the minimum wage was willful within the

meaning of N.Y. Lab. Law § 663.

214.     Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## (VIOLATION OF THE OVERTIME PROVISIONS OF THE

## NEW YORK STATE LABOR LAW)

215.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

216.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

217.     Defendants failed to pay Plaintiffs (and the FLSA Class members) in a timely fashion, as required by Article 6 of the New York Labor Law.

218.     Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

219.     Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## (VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

## OF THE NEW YORK COMMISSIONER OF LABOR)

220.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

221.     Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of New York Lab. Law §§ 190 *et seq*. and 650 *et seq*. and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 146-1.6.

222. Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of New York Lab. Law § 663.

223. Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## (VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW)

224. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

225. Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

226. Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## (VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW)

227. Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

228. With each payment of wages, Defendants failed to provide Plaintiffs with a

statement listing each the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

229.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

### (RECOVERY OF EQUIPMENT COSTS)

230.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

231.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, such as bicycles, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C. § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

232.    Plaintiffs were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### (VIOLATION OF THE TIP WITHHOLDING PROVISIONS

### OF THE NEW YORK LABOR LAW)

233.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

234.    Defendants unlawfully and without permission from Plaintiffs (and the FLSA class members) misappropriated and withheld gratuities paid by customers which should have been retained by Plaintiffs (and the FLSA class members).

235.    Defendants' action violates NYLL §196-d.

236.    Defendants are liable to Plaintiffs (and the FLSA class members) in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(d)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' (and the prospective collective class members') compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violation of the provisions of the FLSA were willful as to Plaintiffs (including the prospective collective class members);

(f)    Awarding Plaintiffs (including the prospective collective class members) damages

for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs (including the prospective collective class members) liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiffs;

(k)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)     Declaring that Defendants' violations of the New York Labor Law and Spread of Hours Wage Order were willful as to Plaintiffs;

(m)     Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiff Sandoval and the members of the FLSA Class;

(n)     Awarding Plaintiffs damages for the amount of unpaid minimum and overtime wages, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL, as applicable;

(o)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and

recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)   Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, spread of hours pay, and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)   Awarding Plaintiffs and the FLSA class members damages for Defendants' failure to pay Plaintiff in a timely fashion, as required by NYLL § 191;

(r)   Awarding Plaintiffs (including the prospective collective class members) pre-judgment and post-judgment interest as applicable;

(s)   Awarding Plaintiffs (including the prospective collective class members) the expenses incurred in this action, including costs and attorneys' fees;

(t)   Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(u)   All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York
        September 29, 2017

                                    MICHAEL FAILLACE & ASSOCIATES, P.C.

                            By:    /s/ Michael Faillace___
                                   Michael Faillace [MF-8436]
                                   60 East 42nd Street, Suite 4510
                                   New York, New York 10165
                                   Telephone: (212) 317-1200
                                   Facsimile: (212) 317-1620

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 16, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                     Prixco Soriano

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      16 de agosto de 2017

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

<div style="float:right">Telephone: (212) 317-1200
Facsimile: (212) 317-1620</div>

Faillace@employmentcompliance.com

August 16, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name/ Nombre:              Emilio Jeremias Ramirez Rojas

Legal Representative/ Representante     Michael Faillace & Associates, P.C.
Legal:

Signature/ Firma:          _emilio geseꞡios_

Date/ Fecha:               Agosto 16, 2017

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 17, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la
demanda como uno de los demandantes.)**

Name / Nombre:                    Agustin Valeriano

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     17 de agosto de 2017